May it please the Court, my name is Alan McGarvey. This is an appeal from injunctions issued by the Federal District Court in Montana which explicitly prevent a settlement of other litigation in the bankruptcy court in Delaware. Specifically, the injunctions at issue expressly enjoin settlement or litigation in the bankruptcy court with the following language. We are enjoined from, quote, taking any action in the bankruptcy court that could in any way impact upon the claims, close quote, in the Montana court. We are ordered to, quote, notify the bankruptcy court that this court has rejected these proposed settlements in their entirety, close quote, and we are directed that, quote, the McGreevey class representatives are to be notified that they do not have any capacity to negotiate, enter into a sign, or in any way bind any class of persons having any actual or alleged interest in the subject matter, close quote. We appeal because these injunctions. Who's we? Use the word we several times in your rendition of the injunction. Who's we? We are the McGreevey parties who are parties in a putative if not certified class in Montana and also are representatives of a putative though not yet certified class in the bankruptcy court. Now, as I read the injunction, it appeared to me that the court was referring more specifically to counsel and not to parties. Can you explain to me why it is that you've answered the question the way you did by referring to the parties? The injunction does indeed address counsel in the first part of the quotes that I read are directed to counsel. The last part of the quote is directed to the parties, specifically the McGreevey class representatives, and I've referred to them collectively because whether it's the attorneys or the parties, either way, the litigation in the bankruptcy court cannot go forward on behalf of these interests, these parties and the interests they would represent. Well, is there anything that would preclude the bankruptcy court litigation from going forward either with different counsel representing the same individuals or different representatives for the same or essentially the same class of interests? I mean, it seems to me what's going on here is concern on the part of the district court for absent class members in what is at this point, and I have to say I'm confused in lots of respects because there was apparently certification in the state court, which the federal district court has disavowed without actually decertifying, and yet there's not an argument to us that the class ought to be recognized as originally certified, so I'll accept on face value that the court has in effect said I'm not recognizing what happened before. There's apparently been no effort to certify a redefined class in front of the district court or to get certain class representatives or certain class counsel approved as representatives of this undefined class. There's concern on the part of the district court, which I have to say I share, that at least some absent class members may find their interests affected adversely because of class representatives and class counsel deciding that there's a richer vein of gold someplace else, and that is what it seems to me triggered the district court's reaction, that he believed that class counsel was acting in class counsel's interest in a way that was adverse or potentially adverse to absent class members. You've got an obligation to absent class members having filed the suit and appearing in Montana, and you can't barter that away when you go off to bankruptcy court elsewhere. So he acted. Now, whether he acted properly or not, I'm not sure, but it struck me that was his interest, and it was pointed very much at class counsel and very much at class representatives acting, as they generally do at the behest of class counsel, in a way that might be adverse to absent class members. And so when you tell me that the bankruptcy court can't do anything, I just don't see it. Other lawyers representing other people for the same interests seem to me perfectly free to continue. The bankruptcy court cannot go forward because the parties to the issue in the bankruptcy court are the McGreevy parties, and we represent them, and perhaps they could get separate counsel, but they are the parties that are being sued. They're being sued because they are also the parties in the Montana court. But, Your Honor, that's a question of standing. The reason that nothing is being done in the Montana court in terms of certification or obtaining authority, and I think the Montana court's concern is that we should have authority from that court. The reason that's not happening is there is no litigation moving forward in the Montana court, and no litigation can move forward in the Montana court, because the first issue that needs to be resolved is who owns the claim, and the only court that can resolve that is the bankruptcy court. And that issue has been brought to a head by the filing of a complaint suing the McGreevy parties as representatives of a putative class. That court has exclusive jurisdiction over who owns the claim. And what's the status of that question in the bankruptcy court now? The issue has been submitted to the court for ruling. It's been argued twice. The court has intimated that it's inclined to rule against the shareholders on that issue and that a ruling may be coming imminently. So what the class in the bankruptcy court is facing and the effect that it will have in the Montana court is a ruling that will entirely eliminate the shareholder case. And it will happen before there is any notice to the class of this crisis in their case. So what we're trying to do is bring a proposed settlement that will resolve this issue. And here's why. First, the bankruptcy court, because it has exclusive jurisdiction, it's the only court that can address the ownership issue. And in the interest of time. Is it certified a defendant class? We've been sued as a defendant class. It has not yet been certified. But whether or not it's certified, it will have the same effect. Because of the standing of these representatives, you can't have a different ruling for identically situated claims. And obviously the same court is going to reach the same ruling for anyone else. So this is the adjudication that's going to determine the shareholder claim on the issue of does it own it. And if the shareholders lose that claim, then we have this problem. Goldman Sachs and Milbank Tweed then moved the Montana court to dismiss the claim on the grounds that Touch America doesn't own it either. And then we've got no case resolved on the merits. And that arises out of this jurisdictional dilemma. The federal statute puts this exclusive jurisdiction in this court. So our settlement eliminates the risk to each side, and indeed the risk that both sides face, that the case may be thrown out of the court before it's ever resolved on its merits. And what the settlement achieves is it brings the case, all of the case, to the Montana court to be resolved on the merits. We're simply resolving who owns the claim. And the only place that can be resolved is in the bankruptcy court. So the bankruptcy court is trying to move forward with that litigation. The matter has been submitted. There may be a ruling, may be a need for an appeal. That's the status there. And we've got a proposed settlement of litigation that is in the bankruptcy court and can only be in the bankruptcy court. And the Montana court is concerned that our settlement efforts in the bankruptcy court are without authority. And the Montana court is therefore trying to force us to submit to the strictures of get authority under class procedures under Rule 23. And the error is that, yes, we need authority to represent a class, but that authority has to come from the court in which this issue is being litigated. That's the bankruptcy court.  Well, apparently nothing has been done to certify a defendant class in the bankruptcy court. And my inference, which is purely an inference based on what's been put in front of me, is that the reason that your client is identified as the representative party or has been named in the bankruptcy court is because of the apparent certification in the state court era of this lawsuit, which causes your client and class counsel for you as class counsel for that client to be recognized. Well, that's who's representing that group. So if that's the basis for being recognized in the bankruptcy court, I can understand some concern if the district court doesn't really think you've been recognized. Like I say, I think the whole – that track is a strange one to me, but, okay, that's how it stands now. So he doesn't think that recognition should count for much just yet, and or concerned about as the class definition changes, and even I've watched some evolution, and I'm not surprised by that. I was in class actions as a lawyer, and I watched evolution there, too. But at some point there is a concern that I think he's got some basis for saying needs to be addressed. The route may be to seek approval since that Montana court is the one that has given the – well, he didn't give the certification, but that lawsuit is the one that produced the certification. He's saying in a fashion, okay, if that's where the certification came from, that's where the approval should come from as well. The certification or non-certification in Montana is not the matter here. That's not the concern here. If there is a certification, if there's going to be any effect on a class, it's going to be because a class is certified in the bankruptcy court. We were not sued. Our clients were not sued because they are class representatives, although that is an allegation of their standing. But they are sued because they are the ones trying to bring this claim, which Touch America contends belongs to the planned trust. That's why they're being sued. And that's what brings our clients into the bankruptcy court, and that's where the issue has to be resolved. Now, if the bankruptcy court, regardless of whether a class should or should not exist or does or does not exist in the Montana court, if the bankruptcy court refuses to certify a class, it refuses to certify a class. And so it should, but that's an issue for the bankruptcy court. And that's exactly the effect of the gravamen of the Negretti decision, is that one court is not supposed to interfere with what another court's doing. Should there be a class? What should the form of that class be on the litigation of the issue of who owns the claim? The bankruptcy court is the court that can do that, and the Montana court does not have all writs power to interfere with that just because it will have an impact on the case before the Montana court or on the parties before the Montana court. It's not sufficient ground. I'm not sure how good an analogy Negretti is, because you're dealing there with overlapping claimants or classes of claimants represented in separate actions by separate people. In this case, the district court is dealing with a class representative and class counsel, who's the very same person. And if his concern is that the interests of the class in the Montana action of absent class members in particular may be abused in some fashion because you're motivated to strike a different kind of deal on the bankruptcy court, I think it's fair for him to have control over the party in front of him as class counsel, that party not behave differently someplace else because it suits the person's individual interests someplace else. Well, first let me clarify. There's not this counsel and party identity. That does not exist. There's a similarity between my name and the lead plaintiff. I didn't mean to say it should be the same people, but as a practical matter, class representatives are not often the dominant party in the relationship. Your Honor, counsel suggests that, Your Honor, the Negretti holding is a holding of interpretation of the scope of the All Writs Act. And sure, the Montana court may be concerned about the impact that it has on his case, but there are lots of cases out there that could have an impact on his case. And he may be concerned that that comes out of something that we're trying to bargain and something improperly in another court. That happens all the time. But Negretti holds that's not enough. It has to be a ruling that is impairing the judgments or pending settlements in the adjoining court. I just don't think Negretti had this situation. Negretti didn't have the same lawyer in front of him that's acting in a different court on behalf of the same party, but perhaps not the same class. That's true. But it doesn't change the point, the key points being, that regardless of who the class representatives or their attorneys are, they are in another court that has exclusive jurisdiction over the subject matter. And the Montana court is trying to, it is, preventing what that court does. And can it do it simply because it has a different counsel? Let me try hypothetical. And let me make this clear. I'm not saying that this is the case here. I've made suggestions that I should be clear on. I'm not saying is the case here. I'm just trying to fathom what I can out of the record and what the district court's concern might be. But suppose you had a class counsel appearing in one court with a class representative and also appearing in another court, same class representative, maybe somebody different, I don't think it matters, on behalf of a class that's similar but not identical or maybe described in similar terms, but when you get down to it and you wind up in settlement negotiations redefining the class, you wind up with a group that's actually somewhat different than the class counsels appearing in front of the first court. Doesn't the first court have some basis for interest for the absent class members in his action to make sure that those interests don't get bartered away over in the other lawsuit? Under Negretti, yes, in one very narrow, strictly circumscribed situation. That is where the first court has a judgment or a pending settlement. Otherwise, it's up to the other court to make sure that the settlement is fair. It's up to the other court to make sure that class is fair. The other court's not dealing with the same class. The other court's not concerned about the absent class members in suit one that might be cut out as a result. And if it's the same lawyer, and this is the distinction I think means Negretti doesn't speak to, if it is the same lawyer and if we'd assume for a moment that it's certified class counsel in court number one and one of the complications here is the district court's apparent nonrecognition of the certification that took place before. But if you've got a lawyer in front of you who you've certified as class counsel for a class, I don't know that it's wrong for the district court to say, and your obligation is to that class, not for this different group over there where you may think you can strike a better deal. For them, but not for the people here. Well, I think that there could be a concern, but I think under Negretti that concern can only rise to the level to allow the issue of an injunction if there's a pending settlement, there's something going forward in the Montana court. Number two, the reason nothing's going forward in the Montana court to be interfered with is the Montana court can't address that. It's not like we have two different identical proceedings where one is striking a better deal. Here, the Montana court cannot resolve this issue. Only the bankruptcy court can. Should the Montana court answer that? But if you're doing a settlement, if you're doing something short of a resolution, there's no question the only court that can decide this matter is the bankruptcy court. But if you're striking a deal and the deal affects the interests of the Montana absent class members every bit as much as it affects the interests of the absent class members in whatever class is defined in the bankruptcy court, doesn't the Montana court have some basis for saying when the lawyer that's doing it is the same lawyer that's been certified by it for its absent class members, have some control over that lawyer? I believe the answer is no. The bankruptcy court has to have full power to address the issue over which it has exclusive jurisdiction, including resolving that by a judgment approving a settlement. We are only proposing to settle the issue of who owns the claims. What that will do is bring back to the Montana court all of the issues of the merits of the case for the Montana court to resolve. We're not resolving any of those. We're not changing the merits of those claims for any class members. They will all be there to be presented to the Montana court. Well, no, that's not quite true, because suppose the compromise or the agreement reached in the bankruptcy court says those absent class members don't have claims anymore, and indeed that appears to be what the proposed settlement says, although to be fair about it, it gives the absent class members an interest, a reason to be motivated, a reason to approve, and indeed it strikes me this deal may make eminent sense for the absent class members. But it's unquestionable that the bankruptcy court settlement could affect the rights of the absent class members in the first lawsuit, in the Montana lawsuit, and the potential is there, and I don't see that here, but the potential is there for the class counsel basically to sell out group number one because it's better for him in group number two. We don't have that competing thing, because there's nothing to compete against in the Montana court. And no, we're not. Yes, it has an effect on the Montana case, but the effect is simply who owns the claim, and that's the bankruptcy's concern. Once that's resolved, the merits of the case and all the recovery that may come on the case is not compromised at all. It's there to be distributed according to the terms of settlement of one issue, who owns the claim. And both sides have a lot to risk from that. Both sides could lose it. I'd like to reserve some time for rebuttal here. You will be given more time for rebuttal. Thank you. Good morning, Your Honors. May it please the Court, David Frey of Munger, Tolleson, Olson for Appellee, Milbank, Tweed, Hadley, and McCloy. Your Honors, the question in this appeal is whether the district court has the discretion to supervise the conduct of class counsel in a putative class pending before it. Before you go too far, let me stop you and ask one thing. And this in no way denigrates the contribution. I found the brief to be very helpful. But when I stop and say, okay, whose ox is being gored here, I'm not sure that your client has much to say about this dispute. I mean, your interests are having the whole thing disposed of and out of the way. You're not representing the absent class members in any fashion. So I want to hear from you, but shouldn't I take everything you say at least and consider the lens through which it's being, I mean, view it through a lens that considers who's offering up that view? Your Honor, you are welcome to do that. I would appreciate that it be taken for the merit of what is said. But you're welcome to view it through that lens. My client's interest in this is twofold. One, the proposed settlement that they're talking about pursuing is based on an improper assignment of claims against my client, and my client has an interest in seeing that not occur. Moreover, my client has an interest, if there is a resolution of this case or there's a judgment in this case in favor of my client, that that not be subject to some challenge from an absent class member who thinks the manner in which the case was litigated was somehow improper. So my client has at least those two interests in what occurs here. The issue here is not whether the district court can interfere with the proceedings in the bankruptcy court. The district court's order does not enjoin the plaintiffs in this case. It only enjoins their Montana counsel. The plaintiffs are free to litigate in the Delaware bankruptcy court, and they have counsel who can represent them there, Delaware counsel. The district court's order was carefully circumscribed. The district court did not terminate plaintiffs' counsel as counsel to the putative class in this case, although under Rule 23 the district court could have done so. Rather, it acted to prevent any harm from coming to the absent class members pending a further hearing into counsel's conduct and whether counsel would have a continuing role in this case. That hearing has not occurred because before the court could schedule that hearing, counsel filed a notice of appeal and subsequently advised the court that that notice of appeal divested the court of jurisdiction over this matter. The district court was prompted to act here when it was presented with a third in a series of improper settlement agreements negotiated by plaintiffs' counsel in this case. The first such agreement, the so-called $67 million settlement, had a provision that would have provided for payment of fees to class counsel not only on the amount recovered by the shareholders, their clients, but also on the amount recovered by the Touch America Creditors Committee, an adversary of the shareholders. The district court, when presented with this in April 29, 2005 hearing, said to class counsel, You're wasting your time trying to persuade me that you obtained this $67 million pot of money for the benefit of everyone, including the creditors' committee. Furthermore, he said, The second settlement, the Northwestern settlement, was presented to the court as a fait accompli. Plaintiffs' counsel negotiated it and partially implemented it in the bankruptcy court without even advising the district court of its existence. That settlement was entered into without following a Rule 23 process in any court. It was not brought to the district court for approval under Rule 23E, and in the bankruptcy court, the bankruptcy court wasn't asked to certify a class. The bankruptcy court was not asked to and did not define a class. It did not appoint class representatives, and it did not appoint class counsel. When presented with this at a March 16, 2007 hearing, the district court found that what had occurred was fundamentally at odds with the requirements that are visited upon those who seek to represent a class in a class action. The district court found that it could be detrimental to the interests of the class members, and on that basis, the court ordered that plaintiffs' counsel was to refrain from entering into any agreement without prior consent from the court. That brings us to the third agreement, the agreement with the planned trust. Plaintiffs' counsel was quite frank that the point of that agreement, the motivation in entering into that agreement, was that the bankruptcy court had issued a tentative ruling on March 28, 2007 against the plaintiffs saying that they do not own the claims, and they do not own the claims. Well, one of the things that confuses me here, when you make that argument in your brief, and it sounds pretty plausible to me that this is a claim that doesn't belong to the shareholders, but that would suggest that from the perspective of these class members, including the absent class members, this is a pretty good deal because they get something when otherwise they're in line to get nothing, or otherwise they're behind all the other creditors with regard to the possibility of collecting, and I have no idea what the numbers are, but this looks like a pretty good deal from the perspective of the shareholders. Your Honor, I think there are several problems with this, and more to the point, I think that it was not an abuse of discretion by the district court to find that it was not a good deal for the class members. The first issue is the deal can't work. Under Montana law, you cannot assign tort claims, and so this does nothing but delay the process in a case that's already been pending for a long time. Furthermore, in negotiating this agreement, plaintiffs' counsel negotiated away the constitutional due process right of absent class members to opt out. In addition, under this arrangement, the plaintiffs, the shareholders, their claim would be subsidiary to the claims of the creditors of Touch America and the preferred shareholders, which not only puts them behind them, but creates a conflict for whoever's trying to run that litigation because those people obviously have an interest in seeing them get 100 cents on the dollar at the earliest possible date, whereas the shareholders are interested in holding out for the largest possible amount of money. In addition ñ Well, but see, if I'm an absent class member, if I'm a shareholder and in the settlement I get half, and in the non-settlement situation I stand to get nothing because I have no standing, and so my possibility of collecting requires me to stand behind all the other creditors, I'm not sure how you'd say that what's being proposed is worse, or that it's an unmanageable conflict. Your Honor, there are a couple other reasons that I'd like to cite, one of which I think really bears on that question. The first is, and this doesn't bear on that question, but the first is another issue with the settlement that was identified at the hearing before the district court was the potential that the D&O insurance carriers who were going to provide the $67 million would assert the insured versus insured exclusion if there was a substitution of the planned trust for the shareholders in this case, and that would pose the risk that a $67 million pot of money that otherwise these people might have a claim on would disappear. The one that really goes to your question, Your Honor, is this settlement also had a term under which plaintiff's counsel would switch sides. They would go from representing the shareholders to representing the adversary, the planned trust, and the district court could reasonably conclude that he can't be confident that this was the best deal that could have been negotiated in light of that self-interested provision in the agreement. But you just told me that the shareholders don't have a claim, so how can that be worse than nothing? Well, Your Honor, the issue is not whether it's worse than nothing. The issue is whether it's worse than the next best deal that they could have negotiated. If they could have negotiated a better deal than this... Well, then you examine the settlement and you can listen to challenges, but right now the suggestion that they can't do anything leaves me as a class member, as a shareholder, facing nothing because my assessment is the same as apparently everybody else. This claim belongs not to the shareholders. So I hear that there are bumps in the road, but I haven't heard anything that tells me why the shareholders are getting screwed by this. It seems to me they're getting something instead of nothing, and that's usually better than nothing. Well, Your Honor, for the reasons I outlined, I think that the issue is whether this deal is better or worse than some other deal that could have been negotiated, and I don't think the district court... That happens in class settlements all the time, particularly when you're a multiple class counsel. And I've watched the phenomenon. Who gets to strike the deal and how much is going to be enough to get the court's approval and so forth? That happens, and courts have to deal with that question. Is this the best deal that can be struck? There are conflicting interests, and I understand why the Montana court thinks it's got a role to play, but I look down the road and I have some trouble seeing exactly what the problem here is if, as everyone seems to be arguing here, the claim properly doesn't belong to this class of plaintiffs because the shareholders aren't the ones that have the right to bring this claim. Well, Your Honor, I think I've articulated the reasons that I think that that's not the case, among others, that this cannot work. The district court cannot allow the substitution of the planned trust for the shareholders because the assignment of claims is improper under Montana law. So the district court could find that this was not in their best interest because it's not a workable deal. And the district court didn't prevent them from going back and trying to work out a workable deal. He enjoined their Montana counsel, who he believes were not acting properly, but he didn't enjoin them, and they have Delaware counsel who can represent them. So your understanding of the injunction is that it's limited literally to the counsel in the Montana courtroom, and that their counterparts that they've been working with are not covered by the injunction. I'm sorry. The district court was extremely clear on this issue. The district court said, All of the lawyers in the law firms appearing and of record in this case for the so-called McCreevy class further identified as counsel for plaintiffs in cause CV-03-01 Butte are individually and collectively enjoined by this court. And then further down said that he said that the same lawyers and then articulated a further restriction. He could not have been more clear that the only lawyers that he was enjoining were counsel of record in the Montana action. I realize you can't speak for the court, but I think that becomes important because if I were one of the counterpart counsel in bankruptcy court, I would at least pause before wanting to do something that raises the ire of a sometimes irascible judge. So it appears to be your clear understanding as well that the limitation is imposed only upon the people actually appearing in Montana. Yes, Your Honor. And I think that the district court went out of its way to be extremely clear that that's who the order covered. Your Honor, what we have here is an experienced district court judge exercising its responsibility to supervise the conduct of counsel for a putative class. That responsibility is vested in the sound discretion of the district court. There's been no argument here, nor could there be an argument, that the court abused its discretion in entering this order. In order to try to avoid this, the plaintiffs have articulated three arguments, none of which have merit. First, they contend that the court didn't have the authority to issue this order. Under Rule 23, the district court has express authority to appoint class counsel and where a class has not yet been certified to appoint interim class counsel. Furthermore, it has the express authority to issue any other order in connection with that appointment. This order falls squarely within that authority. In addition, the district court has authority under Rule 16f, under its inherent authority and under the All Writs Act, to enforce its prior orders, which would go to its March 16, 2000 order barring plaintiffs' counsel from entering into any further agreement. Therefore, the court clearly had the authority to enter the order. Plaintiffs also contend that this was procedurally improper. They argue that it's under Rule 65, and the court failed to follow the Rule 65 procedure. This is not a preliminary injunction under Rule 65, however. This order, a preliminary injunction under Rule 65, maintains the status quo between the parties pending a trial on the merits. This order doesn't go to the status quo between the parties at all. It only goes to the conduct of litigation by counsel. That brings me to an issue that was not raised in the briefs, and I apologize to the Court. This is something that should have been raised in our brief, and I only bring it up here because it goes to the Court's jurisdiction. Just as this is not a preliminary injunction under Rule 65, it is not an injunction under Section 1292 that's an appealable order. For purposes of Section 1292, the definition of injunction does not reach orders concerning the conduct of the parties or their counsel unrelated to the substantive issues in the action. For that, I cite Abernathy v. Southern California Edison, 885 F. 2nd, 525. Specific passage is at 528. That's a 1989 decision of the Ninth Circuit. This order clearly falls within the ambit of that decision. This is an order that goes to the conduct of counsel in the litigation and doesn't reach the substantive issues in the case. And notwithstanding that rule of law, for many years the courts found that sanctions against attorneys were an immediately appealable order, but that rule and that line of cases was overturned by the Supreme Court in 1999 in a case called Ohio, where the court found that a Rule 37 sanction against an attorney was not an appealable order. This court has found, has extended the Cunningham Rule to orders under other provisions other than Rule 7, including sanctions issued according to the court's inherent authority or under Section 1927. And more pertinently to this case, the court has extended it to things other than sanctions. Last year in a case called Molsky v. Evergreen Dynasty, 500 F. 3rd, 1047 at 1056, this court found that an order that barred counsel from filing any further actions under the Americans with Disabilities Act without prior consent of the court was not an appealable order under the Rule of Cunningham. So under Abernathy and Cunningham and the Progeny of Cunningham, the order presented to this court is not immediately appealable and the court lacks jurisdiction. Finally, the plaintiffs argue, and it was repeated here this morning, that only the bankruptcy court has jurisdiction over the question of who owns the claims, the direct derivative question, and that the district court therefore improperly interfered with that exclusive jurisdiction. That argument is mistaken for two reasons. First, the district court didn't interfere with the proceedings in the bankruptcy court because, as I've stated, the order only goes to the Montana counsel. Plaintiffs are free to litigate in Delaware and they have Delaware counsel to represent them. Moreover, the direct derivative issue is not within the exclusive jurisdiction of the bankruptcy court. Federal courts have regularly addressed the direct derivative question in regarding a bankrupt entity outside the context of the bankruptcy court. I would cite Bechet v. American Isuzu Motors, a First Circuit decision from 2005 at 404 F. 3rd, 491. That's on appeal from the District of Massachusetts, not a bankruptcy court case. Also, Cal Vorhees and Company v. American Financial Corp., 8 F. 3rd, 130, a Second Circuit decision from 1993. That case is particularly instructive because in that case there was a Texas bankruptcy proceeding and the bankruptcy court in Texas actually decided the direct derivative issue, and the Second Circuit didn't defer to its decision. It conducted its own analysis of the direct derivative issue. I have not located a Ninth Circuit decision on the direct derivative issue, but on an It could decide, in Smith v. Arthur Anderson, 421 F. 3rd, 898, it could decide whether claims belong to the bankrupt entity or to its creditors. And if it can decide whether it belongs to the creditors or the bankrupt entity, it could decide whether it belongs to the shareholders or the bankrupt entity. On a final note, Your Honors, this case has a long and complicated history. The district court has endeavored to handle this complex case fairly and efficiently. In this instance, the district court acted to supervise counsel for a putative class before it. The appellate courts, including this court, have long deferred to the district court's judgment on issues such as this. There is simply no reason in this case to second-guess the determination of the district court here. For that reason and for the reasons stated in our briefs, Your Honors, I would request that the district court be affirmed. Thank you. Thank you. Let me ask you. Jurisdiction is an issue that we can't disregard, but it's pretty serious and difficult to deal with on the fly. I'll consult with my colleagues, but if we would request letter briefs from the parties on that subject, how long would it take you to be able to prepare and submit in writing the argument that you offered up to us this morning? I could do it within a week, Your Honor. Okay. Your Honor, the suggestion has been made that the injunctions should be construed as only applying to the attorneys. And the court can read the language. It clearly says that the McGreevey class representatives cannot act on behalf of any class.  The point is, under the All Writs Act, is the bankruptcy court's litigation being interfered with? And the answer is undeniably yes. The Montana court has enjoined this settlement, and it's a settlement of an issue that can only be resolved in the bankruptcy court. So the question is, do these concerns about Montana counsel and the interest in both cases, can they be addressed by interfering with the other court's jurisdiction? And that's where the Negretti case comes to this. And it says no. There simply is no support for the proposition that a court may enjoin parties from participating in or reaching a bona fide settlement in another federal court. And the reason is, otherwise we've got courts interfering with one another. Well, but the parties there appeared to me to refer to the defendant, that the first court, the California court in that instance, is preventing the defendant from settling similar claims elsewhere. There's nothing like that here. The question here is whether this class counsel and this class representative can take that status elsewhere or be recognized elsewhere and make a deal which is contrary to the interests of the people he's supposed to be representing in the Montana court. I think that's just a different issue. It's not taking the authority from the Montana court anywhere else. We're asking the Delaware court to certify a class on the issue that's before the Delaware class. That is the settlement that's being enjoined. The Montana court should enjoin any conduct that is in this court, in the Montana court and in the Montana court proceeding. It should not enjoin matters that are in the bankruptcy court. Because only the bankruptcy court can certify a class on the ownership issue. And because only the bankruptcy court has the plan trustee before it, the other party. Due process can't be afforded by any other court. The Montana court should not be jumping into that simply because it's same counsel, simply because it has an effect. That's not sufficient under the All Wits Act. And that's exactly the essence of the Negretti holding. We ask the court to recognize the effect of this injunction is simply this. A case is going to judgment in the bankruptcy court because the case cannot be settled. It cannot be settled because the Montana court has said no settlement may go forward in the bankruptcy court. And that means that if that judgment is entered against these claimants, their case is gone. And due process says to me that those class representatives should have a chance to know that their case is at risk. That their case is before the bankruptcy court and a ruling is going to come down against them and they've got a chance to enter into a settlement. And the Grider and Negretti rationale is based on this recognition. The federal courts all presume to give the full measure of due process. All of the concerns that your Honor has identified, that the court has identified can be and will be addressed by the bankruptcy court. Indeed, it's the only place where they can be addressed with due process given to all parties. We ask that the injunctions be reversed so that we can litigate all concerns over the propriety of the settlement of this claim ownership issue. So that once those are resolved, the whole case can come back to the Montana court and be addressed on its merits. I think that's exactly the holding of Negretti. If we do wind up requesting supplemental briefing on the jurisdictional issue and defendants take a week, how long would you need to respond to what they have to say? We can respond within a week. We thank both counsel for the argument. The case just argued is submitted. That concludes the calendar for this morning. We're adjourned.
judges: Clifton, Smith, Sandoval